1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMOR J. BLACKTONGUE,

                Plaintiff,

      v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

                Defendant.

Case No. C16-806-RSM

**AMENDED ORDER ON SOCIAL
SECURITY DISABILITY**

## I.      INTRODUCTION

Plaintiff, Amor J. Blacktongue, brings this action pursuant to 42 U.S.C. §§ 405(g), and

1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security

denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Title II and Title XVI of the Social Security Act.  This matter has been

fully briefed and, after reviewing the record in its entirety, the Court **REVERSES** the

Commissioner's decision and **REMANDS** the matter for an award of benefits under sentence

four of 42 U.S.C. § 405(g).

_____

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting
Commissioner Carolyn W. Colvin as the defendant in this suit.  The Clerk is directed to update
the docket, and all future filings by the parties should reflect this change.

## II.     BACKGROUND

On March 31, 2011, Mr. Blacktongue filed an application for Disability Insurance Benefits (DIB) and on July 13, 2011, filed an application for Supplement Security Income (SSI).  Tr. 26, 132-43, 323-31.  Both applications alleged disability commencing on June 5, 2009.  *Id.*  Mr. Blacktongue's applications were denied initially and upon reconsideration.  Tr. 26.  A hearing was held before Administrative Law Judge (ALJ) Glenn G. Meyers on September 30, 2014.  Tr. 415-51.  Mr. Blacktongue was represented by counsel, Steven Knaphus.[2]  *Id.*  Maggie Dillon, a vocational expert, also testified at the hearing.  *Id.*  On October 23, 2014, Judge Meyers issued an unfavorable decision.  Tr. 26-40.  On March 29, 2016, the Appeals Council denied review, and the ALJ's decision became final.  Tr. 1-4.  Mr. Blacktongue then timely filed this judicial action.

## III.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## IV.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical

---

[2] Mr. Blacktongue is represented on the instant appeal by Rosemary B. Schurman.  Dkt. 10.

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 2

testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.    EVALUATING DISABILITY

As the claimant, Mr. Blacktongue bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or is expected to last, for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable

to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA). 20 C.F.R. §§ 404.1520(b), 416.920(b). [3] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[3] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R § 404.1572.

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 4

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI.   THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[4] the ALJ found:

**Step one:**  Mr. Blacktongue has not engaged in substantial gainful activity since June 5, 2009, the alleged onset date.

**Step two:**  Mr. Blacktongue has the following severe impairments: cognitive disorder vs. borderline intellectual functioning, depressive disorder, anxiety disorder, and degenerative changes in the lumbar spine, with a small herniated disc at L5-S1.

**Step three:**  These impairments do not meet or equal the requirements of a listed impairment.[5]

**Residual Functional Capacity:**  Mr. Blacktongue can perform light work as defined in 20 C.F.R. 404.1567(b) and 46.967(b).  Mr. Blacktongue can occasionally stoop, squat, crouch, crawl, and kneel.  Mr. Blacktongue cannot climb ladders, ropes, or scaffolds and cannot engage in balancing.  Mr. Blacktongue can perform unskilled, repetitive, routine work and is capable of jobs requiring GED level of 1 in language (i.e., reading and writing).  Mr. Blacktongue will be off-task at work 4% of the time but still meet minimum production requirements of the job.

**Step four:**  Mr. Blacktongue cannot perform past relevant work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Mr. Blacktongue can perform, such as hand packager, he is not disabled.

---

[4] 20 C.F.R. §§ 404.1520, 416.920.
[5] 20 C.F.R. Pt. 404, Subpt. P. App.1.

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 5

1  Tr. 26-40.

## VII.   ISSUES ON APPEAL

Mr. Blacktongue claims the ALJ erred in failing to find that he met or equaled Listing 12.05C and was therefore disabled.  Dkt. 10 at 1.  Mr. Blacktongue further argues the ALJ erred by adopting the opinions of nonexamining psychologists and rejecting generally consistent opinions from two examining psychologists.  *Id.*  Mr. Blacktongue also contends the ALJ failed to properly consider all of the evidence and all of his limitations in assessing the RFC.  *Id.*  Mr. Blacktongue contends this matter should be remanded for a finding of disability and payment of benefits.  *Id.*

## VIII.   DISCUSSION

Mr. Blacktongue argues the ALJ erred in failing to find he met or equaled Listing 12.05C, Intellectual Disability, and was therefore disabled.  Dkt. 10 at 1, 4-8.  The Court agrees.

At step three of the disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments set forth in the Listings.  *See* 20 C.F.R § 404.1520(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. Pt. 404, Subpt. P. App.1.  If any of the claimant's impairments meet or medically equal a listed impairment, he or she is found disabled without further inquiry.  *Id.*  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings.  *See Tackett*, 180 F.3d at 1098.  Each listing describes the "symptoms, signs, and laboratory findings" the claimant must establish in order for his impairments to meet the listing.  *Tackett*, 180 F.3d at 1099.

The introductory paragraph of Listing 12.05 provides that "[the subject disorder] refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 6

1    initially manifested during the developmental period; i.e., the evidence demonstrates or supports

2    onset of the impairment before age 22." *See* 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.05C (2011)

3    (current version at 20 C.F.R. Pt. 404 Subpt. P, App. 1, § 12.05C (2017)). [6] The listing further

4    states that the "required level of severity for this disorder is met when the requirements in A, B,

5    C, or D are satisfied." *Id.* Section C of the listing requires "[a] valid verbal, performance, or full

6    scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and

7    significant work-related limitation of function[.]" *Id.* Thus, in order to meet Listing 12.05C, a

8    claimant must satisfy three requirements: (1) "significantly subaverage general intellectual

9    functioning with deficits in adaptive functioning initially manifested during the developmental

10   period; i.e., the evidence demonstrates or supports onset of the impairment before age 22"; (2) "a

11   valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental

12   impairment imposing an additional and significant work-related limitation." *Id.*; *see Kennedy v.*

13   *Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

14          Neither party disputes that Mr. Blacktongue meets the second and third requirements of

15   the listing.[7] Dkt. 19 at 3. However, the ALJ found that Mr. Blacktongue did not meet the first

16   requirement (set forth in the introductory paragraph of the listing) because the evidence showed

17   his current "adaptive functioning is sufficiently intact." Tr. 29. Specifically, the ALJ noted that,

18   [6]An ALJ evaluates a claimant's application under the Listings in effect at the application date.
     *See Maines v. Colvin*, 2016 WL 6648690, *1 (9th Cir. 2016) ("Absent express direction from
19   Congress to the contrary, the ALJ should have continued to evaluate …[the claimant's] …
     application under the listings in effect at the time she filed her application"); *Ball v. Massanari*,
20   254 F.3d 817, 820-21 (9th Cir. 2001).
     [7] The ALJ acknowledged that Mr. Blacktongue had a full scale IQ score of 68 and found he had
21   other severe impairments in addition to his cognitive or intellectual impairment (cognitive
     disorder vs. borderline intellectual functioning). Tr. 28-29. Specifically, the ALJ found
22   additional severe impairments of depressive disorder, anxiety disorder, and degenerative changes
     in the lumbar spine, with a small herniated disc at L5-S1. *Id.*; *see Pedro v. Astrue*, 849
23   F.Supp.2d 1006, 1014 (D. Or. 2011) (finding that an additional impairment listed at step two
     satisfies the third requirement of Listing 12.05C).

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 7

as an adult, Mr. Blacktongue had been able to sustain a number of unskilled jobs and one semi-skilled job over the years.  *Id.*  The ALJ also noted that Mr. Blacktongue's current daily activities included caring "for his six children, ranging in age from 6 to 18 years old, several of whom have a social anxiety disorder."  *Id.*  The ALJ noted that, "[w]hile his wife helps him with paperwork, he helps care for her during periods when she experiences depression and mania due to her bipolar disorder."  *Id.*  The ALJ further noted that Mr. Blacktongue can "independently care for his personal hygiene and grooming, prepare meals such as sandwiches, soup, frozen dinners, spaghetti, and hamburgers, perform household chores such as repairs, laundry, cleaning, and weeding, drive, shop for groceries, visit his mother and sisters, and take his wife to her appointments."  *Id.*  Based on this evidence, the ALJ concluded that "in spite of his cognitive deficits, … [Mr. Blacktongue]…has demonstrated the ability to cope with the challenges of ordinary every day live [sic] and the ability to hold down a full-time job."  Tr. 29-30.

Mr. Blacktongue argues the ALJ erred in focusing on his current adaptive functioning because the relevant question under Listing 12.05C is whether "deficits in adaptive functioning initially manifested during the developmental period" i.e. prior to age 22.  Dkt. 10 at 7.  Mr. Blacktongue further argues that there is sufficient evidence of adaptive deficits during the developmental period to satisfy Listing 12.05C.  *Id.*  The Commissioner argues the ALJ properly considered Mr. Blacktongue's current functioning in concluding that "[w]hile Plaintiff may have had some deficits in functioning initially manifested prior to age 22, those deficits were not at listing-level severity, i.e., they were not disabling."  Dkt. 19 at 7.  The Court agrees with Mr. Blacktongue.

First, as the Court noted in *Evans v. Colvin*, No. 13-5436, ECF No. 27, page 11 (W.D. Wash. Jan. 30, 2014) the plain language of Listing 12.05 "focuses on whether deficits in adaptive

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 8

functioning existed during the developmental period, without reference to current functioning."

Other courts in the Ninth Circuit have tended to follow this interpretation of Listing 12.05C.  *See*

*Pedro*, 849 F.Supp.2d at 1014 (finding the ALJ erred in concluding that because claimant can

now drive, live independently, manage her own hygiene, and care for her children, she is not

disabled because "the record contains evidence demonstrating deficits in adaptive functioning

prior to age 22" and "[t]he listing does not require more."); *Abel v. Colvin*, No. 12-cv-06025,

2014 WL 868821, at *4 (W.D. Wash. 2014) ("Although plaintiff later was able to work at a

variety of low-skilled jobs, the introductory paragraph of Listing 12.05 does not consider

plaintiff's subsequent employment, but rather her level of functioning during her early years—

before age 22."); *Thresher v. Astrue*, 283 Fed.Appx. 473, 474 (9th Cir. 2008) ("the evidence will

support a determination that … [the claimant] … does come within … [Listing 12.05C] …

because two of her IQ scores were in the 60 through 70 range, that *mental condition began*

*before she was 22 years of age*, and she does have an additional physical impairment." (emphasis

added)); *Campbell v. Astrue*, No. 09-cv-465, 2011 WL 444783, at *17 (E.D. Cal. Feb. 8, 2011)

(concluding that "deficits in adaptive functioning" refer to deficits occurring during the

developmental period such as "attendance in special education classes, dropping out of high

school prior to graduation, difficulties in reading, writing or math, and low skilled work

history").

        Second, the Court agrees with Mr. Blacktongue that there is sufficient evidence of

adaptive deficits during the developmental period to satisfy Listing 12.05C.  "The Diagnostic &

Statistical Manual of Mental Disorders describes 'adaptive functioning' as 'how effectively

individuals cope with common life demands and how well they meet the standards of personal

independence expected of someone in their particular age group, socioeconomic background,

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 9

and community setting.... Problems in adaption are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute.'" *Pedro,* 849 F.Supp.2d at 1011 (quoting *American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders* 42 (4th ed.2000, text revision) (hereinafter *DSM–IV* )). To demonstrate deficits in adaptive functioning during the developmental period a claimant may rely on circumstantial evidence such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." *Campbell*, 2011 WL 444783, *17; *accord Able,* 2014 WL 868821 *3-6; *accord Maresh v. Barnhart*, 438 F.3d 897, 900 (9th Cir. 2006) (onset before age 22 demonstrated based on record that claimant was in special education classes, dropped out of school, had difficulty reading, writing and with math, and exhibited deficits in adaptive functioning at a young age). Here, although the ALJ discounts Mr. Blacktongue's testimony on other grounds, he does not appear to dispute that Mr. Blacktongue did not graduate from high school, that he only attended school through the seventh grade, or that he was in special education classes from fourth grade on. Tr. 34. There are also statements in the record from Mr. Blacktongue's father that Mr. Blacktongue had been placed in special education class and that he had not learned to speak until he was five or six years old. Tr. 388. Moreover, the ALJ himself specifically acknowledges that Mr. Blacktongue "has had lifelong issues with reading, writing, and other cognitive deficits." Tr. 34.

Finally, even if it were appropriate to consider Mr. Blacktongue's current functioning, his ability to work at primarily low skilled, manual labor jobs[8] and perform some basic household activities does not undermine the evidence of deficits in his adaptive functioning prior to age 22.[9]

---

[8] The record shows Mr. Blacktongue worked at several unskilled manual labor jobs and had one semi-skilled job as a forklift operator. Tr. 209, 439-40.

[9] The Commissioner points to *McGee v. Colvin*, 13-cv-2230 (W.D. Wash. Aug. 8, 2014) as an

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 10

*See*, *e.g., Pedro*, 849 F.Supp.2d 1006 (history of low skilled work including work in a laundry,

cleaning and bagging groceries and daily activities such as reading, driving and cleaning are not

necessarily inconsistent with low level of intellectual functioning); *accord Abel*, 2014 WL

868821 *3-6 (history of unskilled jobs not incompatible with low level of intellectual functioning

and requirements of 12.05C).  Contrary to the Commissioner's argument, while the introductory

paragraph of Listing 12.05 requires the existence of deficits in adaptive functioning prior to age

22, it does not require a showing that those adaptive deficits are of disabling severity on their

own.  *See Pedro*, 849 F.Supp.2d 1006 ("a claimant can satisfy Listing 12.05C without 'having to

demonstrate a disabling or even severe, level of mental functioning impairment.'" (citing *Gomez*

*v. Astrue*, 659 F.Supp.2d 1049, 1057 (C.D. Cal. Feb. 10, 2010)); *Evans*, No. 13-5436 (W.D.

Wash. Jan. 30, 2014).  And "even though some courts examine current functioning deficits, they

have not [generally] held that any particular indicia of severity must be demonstrated."[10]  *Abel*,

2014 WL 868821 *3-6; *and see, e.g., McGrew*, 2015 WL 1393291, *7 (finding current adaptive

deficits relevant but that "the introductory paragraph of Listing 12.05 requires evidence that

example of a case in which the Court considered the claimant's current functioning in concluding
he did not have sufficient deficits in adaptive functioning to meet Listing 12.05C.  However, as
Mr. Blacktongue points out, *McGee* is factually distinguishable from the instant case because, in
*McGee*, the evidence showed the claimant had engaged in *skilled* work beginning at age 18 i.e.
during the developmental period.  *See McGee*, 13-cv-2230 (W.D. Wash. Aug. 8, 2014); Dkt. 20
at 2-3.

[10] In fact, Listing 12.05 imposes no specific severity requirement with respect to the criteria of
"deficits in adaptive functioning initially manifested during the developmental period."  *See* 20
C.F.R. Pt. 404 Subpt. P, App. 1, § 12.05C.  Rather, the listing indicates that "the required level of
severity of the disorder is met when the requirements in A, B, C, or D are satisfied."  *Id.* With
respect to Listing 12.05C this means the "required level of severity" is met when the claimant
satisfies the requirements of "a valid verbal, performance, or full scale IQ of 60 through 70 and a
physical or other mental impairment imposing an additional and significant work-related
limitation."  *Id.*; *see McGrew v. Colvin*, 13-cv-01909, 2015 WL 1393291, *7 (D. Or. Mar. 25,
2015) (noting that the "existence of deficits in adaptive functioning is considered when analyzing
the introductory paragraph of Listing 12.05 and the severity of those deficits is considered in
subparts A through D.").  Here, there is no dispute that Mr. Blacktongue met these latter
requirements.

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 11

deficits in adaptive functioning exist, not evidence that a claimant has no adaptive functioning skills" and "having some work history and possessing average living skills and the ability to drive does not indicate that a claimant does not have deficits in adaptive functioning"). Thus, even if a claimant's current functioning were relevant, the evidence the ALJ cites does not undermine the evidence of adaptive deficits prior to age 22, nor does it establish that Mr. Blacktongue has no current deficits in adaptive functioning. Rather, the ALJ acknowledges that Mr. Blacktongue has lifelong issues with reading, writing, and other cognitive deficits, that his wife has to help him with paperwork, and limits him in the RFC to unskilled, repetitive, routine, work and GED level 1 in language. Tr. 29, 31, 34.

Under the circumstances, the Court finds there is sufficient evidence to establish that Mr. Blacktongue had deficits in adaptive functioning initially manifested during the developmental period, and, therefore, that he satisfied the requirements of Listing 12.05C. No further proceedings would be useful because the record is fully developed and establishes Mr. Blacktongue should have been found disabled at step three. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). Accordingly, remand for an award of benefits is appropriate in this case.[11] *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

## IX.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for an award of benefits under sentence four of 42 U.S.C. § 405(g).

---

[11] Because the Court finds Mr. Blacktongue meets Listing 12.05C, it need not address his other assignments of error.

AMENDED ORDER ON SOCIAL SECURITY
DISABILITY - 12

1    DATED this 25 day of January 2017.

2

3

RICARDO S. MARTINEZ

4    CHIEF UNITED STATES DISTRICT JUDGE